# Garner *v.* Bond, Adm'r, *et al.*

### *Bill in Equity to Foreclose Mortgage.*

1. *Homestead exemption; what law governs.*—The right to a homestead exemption, in favor of the widow and minor children, as against a mortgage, must be determined by the laws in force at the time of its execution, and at the death of the husband.

[Garner v. Bond, Adm'r.]

2. *Mortgage of homestead, in which wife does not join; how far void.*—A mortgage or other conveyance of the homestead, in which the wife does not join, is void only as to the homestead; if the instrument embraces lands of greater quantity or greater value than the homestead, as defined by the constitution and statutes, the excess in value, or of quantity, passes to the grantee.

3. *Homestead exemption of lot in city; what essential to.*—The constitution of 1868 exempted a homestead in a city, town or village, from liability to seizure on legal process, only where the lot and appurtenances did not exceed two thousand dollars in value; and the limitations as to quantity and value not existing, there was no exemption from payment of debts, and no constitutional restraint as to alienation.

4. *Same.*—If the homestead exceeded the limitation of value, and was incapable of division, so as to reduce it within the limitation, there was no authority, prior to the act of 1873, to allow an equivalent in money; and that act provides for such allowance only where the homestead is sold under legal process, during the life of the owner, or his personal representative sells after his death.

5. *Dower; how can be obtained.*—The court directs the attention of the parties to the consideration of the question, whether on bill filed against the widow and others to foreclose a mortgage executed by the husband, she can obtain dower in that suit otherwise than by cross-bill, and whether an allowance of a gross sum in lieu of dower can be made otherwise than by consent of the mortgagee.

APPEAL from Mobile Chancery Court.

Heard before Hon. H. AUSTILL.

The appellant, Helen Garner, filed her bill against the administrator, widow, and heirs-at-law of John H. Garner, to foreclose a mortgage on certain real estate in the city of Mobile, made by the deceased in his life-time.

The pleadings and proof disclose the following state of facts: John H. Garner owned a house and lot in the city of Mobile, which had been for many years the home of himself and family, and continued to be such up to the time of his death, which took place in August, 1876, since which time it has been occupied as a home by his widow and children. On the 13th day of May, 1874, he executed his promissory note for the sum of ten thousand dollars, payable to complainant twelve months after date. On the 15th of September, 1874, he executed a mortgage on the premises to secure the note, which mortgage recited that the property was his residence, and was duly acknowledged on the 10th, and admitted to record on the 14th, of October, in the same year. The widow, Mary Garner, refused to join in the mortgage, on the express ground that it was the home of the family. The property exceeded in value the sum of two thousand dollars, and was incapable of division. The estate of John H. Garner had been declared insolvent. The administrator and widow demurred to the bill, on the ground that the mortgage showed on its face that the property was

the homestead of the husband, and that the failure of the wife to join in it, rendered it absolutely void. The demurrer was overruled. The final decree rendered, decreed that the widow and children were entitled to a homestead exemption to the extent of $2,000, to be reserved out of the proceeds, and that the widow was also entitled to dower, which should be valued, and the amount retained from the proceeds of sale, the remainder to go in satisfaction of the mortgage debt.

The allowance of the exemption, and of dower to the widow, are now assigned as error.

HERNDON & SMITH, for appellant.—The laws in force at the time of the ancestor's death govern as to exemptions in favor of the widow and children. Subsequent legislation cannot enlarge or diminish their rights in this respect. 53 Ala. 135, 447. The right depends on these laws, whatever may be the changes by subsequent legislation, or constitutional provision.—*Miller v. Marx*, 55 Ala. 322. The laws in force at the time of the death of the husband in August, 1876, were the constitution of Alabama of 1875, article 10, sections 2, 3, 5, and the act of the General Assembly of April 23, 1873. The constitution in such a case as this confers no right of homestead on the widow.—See *Miller v. Marx*. The act of 1873 does not in its letter provide for a case like the present, nor, according to what is written, can any interpretation be made, which will embrace it. Section 11 of the act provides only for carving out an equivalent of $,2000 for the homestead in favor of the debtor, when his homestead, exceeding two thousand dollars in value, is levied on and sold under execution against him. Section 16 provides only for the case where there is no mortgage and the homestead is sold under an order of the Probate Court to pay debts of the husband and father, and confers jurisdiction on the Probate Court to secure the exemption to the widow or children. These are the only courts and modes in which the right of exemption can be asserted under the act of 1873.—See *Rottenberry v. Pipes*, 53 Ala. 450; *Miller v. Marx*, 55 Ala. 322.

ANDERSON & BOND, *contra*.—The plain and obvious purpose of the act of 1873 was to secure to the family a homestead; and if the property exceeded two thousand dollars, to carve out that amount. That act provides that the mortgage of the homestead by the owner, if a married man, shall not be valid without the voluntary signature and assent of

[Garner v. Bond, Adm'r.]

the wife, on a private examination, separate and apart from the husband. What is the homestead under the act of 1873? That homestead, whatever its extent and measure, is not affected by the mortgage, by reason of the non-consent of the wife. If the act of 1873 secured to the debtor's family the amount of two thousand dollars, where the value of the homestead exceeded that, the chancellor was bound to set apart that amount, free from the mortgage, if indeed the mortgage had any validity. We insist, then, if the mortgagee fails to secure the voluntary signature and assent of the wife, the instrument is invalid, no matter the extent or value of the homestead; and if the mortgage be a valid security, the homestead must be carved out before any sale can be made. The complainant must pay or tender the sum of two thousand dollars to the widow and minor children. In this case, the widow has persistently refused to give her assent to the mortgage, and of this the complainant had notice. It seems to us that it would be eliminating from the statute all its protective force, if the widow and family are denied, under these circumstances, the benefit of their homestead.

BRICKELL, C. J.—The constitution of 1868, operative at the execution of the mortgage, and which must determine its validity, so far as it depends upon constitutional provision, like the present constitution, declared, that no mortgage or other alienation of the homestead, by the owner thereof, if a married man, should be valid without the *voluntary signature and assent of the wife.* No particular mode of signing, or expressing the assent, was prescribed. Prior to the statute of April 23, 1873, (Pamph. Acts 1872–3, p. 64), if the wife joined in the execution of the conveyance, and it was acknowledged, or proved, and certified in the mode prescribed by the general statutes for the execution by married women of conveyances of real estate, the mandate of the constitution was satisfied.—*Miller v. Marx,* 55 Ala. 322. This statute declared no mortgage or other alienation of the homestead, by the husband, should be valid, unless the voluntary signature and assent of the wife was shown by her privy examination, certified in writing by a judge or chancellor in a particular form. Neither the constitution, nor the statute, render the mortgage, or other conveyance, absolutely void—it is void only as to the *homestead.* When it embraces lands of greater quantity, or greater value, than the homestead, as defined by the constitution, or the statute,

the excess in value, or of quantity, passes to the grantee. *McGuire v. Van Pelt*, 55 Ala. 344; Thompson on Homestead, §§ 474, 477.

It is a *homestead*, not exceeding eighty acres in quantity, if not in a town, city or village; or if in a town, city or village, a lot with the dwelling and appurtenances, not exceeding in value two thousand dollars, which the constitution exempts from liability for the payment of debts, and disables the husband from conveying *without the voluntary signature and assent of the wife*. The limitation of value applies whether the homestead is in a town, city or village, or in the country. Quantity and value are as essential elements of the homestead, as residence in the State, and actual occupancy by the owner.—*Miller v. Marx, supra.* The act of 1873, enlarged the quantity, and removed the limitation of value, as to homesteads in the country; but wrought no change as to the homestead in the city, town or village— these were suffered to remain as defined by the constitution. The constitution exempted a homestead, as an entirety—not a part of, nor an undivided interest in a homestead. Land, not exceeding in quantity eighty acres, or a lot, with the dwelling and appurtenances, neither exceeding in value two thousand dollars, were relieved from liability for the payment of debts, and alienation thereof restrained. The quantity and value were descriptive features of the homestead, and where these did not exist, the constituton did not operate— exemption from payment of debts did not attach, nor the restraint of alienation.—*Miller v. Marx, supra.*

When the homestead—the dwelling-place, exceeded the limitation of value, and was incapable of division so as to reduce it within that limitation, the constitution furnished no authority and no mode by which an equivalent could be allowed to the owner if living, or if he was dead, to his widow, or minor children.—*Miller v. Marx, supra.* The act of 1873, provided that when the homestead was in the city, town or village, and was of greater value than two thousand dollars, a sale thereof under execution or other legal process could be had, but the purchaser could not enter until he paid or tendered to the owner two thousand dollars. Or, if the owner died, and the homestead was sold by his personal representative for the payment of debts, the purchaser was required to pay two thousand dollars of the purchase-money to the probate judge for the benefit of the widow and minor child or children. The quantity of the homestead in the country having been enlarged, and the limitation of value removed, no pro-

[Rash v. The State.]

vision for the allowance of an equivalent was necessary, as there was no event in which it could be sold. The provision for an allowance of an equivalent in money for the homestead, the statute limited to two cases,—the sale under execution or other process in the life-time of the owner, and a sale after his death by his personal representative. When as in the present case, there was a sale to be made under a decree of foreclosure, after the death of the husband, of a homestead not capable of being reduced by partition or division, within the constitutional limitation of value, no authority is given to any court, to order an allowance or compensation in money to the widow and minor children, for the value of the homestead. The constitution did not contemplate the conversion of the homestead into money—a change of the character of the property into other property incapable of use, as that which was exempt, and the alienation of which was restrained.

The constitution and the act of 1873, must control as to the power of the court to allow compensation for the homestead, and not the act of February 9, 1877, enacted after the death of the husband, and after the execution of the mortgage.—*Taylor v. Taylor*, 53 Ala. 135; *Rottenberry v. Pipes*, ib. 447; *Chambers v. McPhail*, 55 Ala. 367. The result is the decree of the chancellor allowing to the widow and children compensation in money for the value of the homestead is erroneous.

The right of the widow to dower is not controverted. It may be well however for the parties to consider, whether it can be obtained in the present suit, without a cross-bill; and whether otherwise than by the consent of the appellant, an allowance of a gross sum in money can be made to her in lieu of dower.

The decree is reversed and the cause remanded for further proceedings not inconsistent with this opinion.